UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
    )
v.    )
    )  No. 1:23-cr-10255-DJC
MICHAEL VAN RADER,    )
    )
Defendant    )

## GOVERNMENT'S SENTENCING MEMORANDUM

The government respectfully submits this memorandum in support of its sentencing recommendation for Defendant Michael Van Rader. Undeterred by three firearm-related convictions within the previous five years for conduct that occurred in or around the same vicinity of the instant offense, and (1) while on probation for his most recent firearm conviction, for which he had just been released from prison and (2) in direct violation of a no trespass order, on September 3, 2023, Defendant possessed with intent to distribute numerous bags of cocaine on the grounds of a public housing facility.

Neither substantial periods of incarceration, nor nearly continuous criminal justice supervision, nor no trespass orders issued by the BHA deterred Defendant from committing his most recent dangerous crime. A significant sentence is warranted to protect the safety of the community and send a clear message to Defendant. A sentence of 27 months, which is at the low end of the Guidelines imprisonment range, followed by the minimum six years of supervised release is sufficient but not greater than necessary to accomplish the goals of sentencing.

## I.    FACTUAL BACKGROUND

On or about September 3, 2023, at approximately 4:30 p.m., Boston Housing Authority ("BHA") officers were patrolling the Mildred C. Hailey Housing Development (the "Development"), a public housing authority-owned housing facility, with a focus on certain

locations due to an increase in complaints and information received from residents and management concerning illegal activity therein.  PSR ¶ 8.  Officers observed Defendant leaving one of the Development's buildings.  *Id.* ¶ 9.  Officers were familiar with Defendant and knew he had an order barring him from trespassing at the Development.  *Id.*  Defendant had been made aware of this no trespass order on several occasions, including at least as recently as approximately two months earlier.  *Id.*

At approximately 5:05 p.m., officers observed Defendant loitering in the back of a Development building with numerous Heath Street Gang members/associates for approximately 45 minutes.  *Id.* ¶ 10. Officers arrested Defendant at approximately 6:00 p.m. for violating the no trespass order.  *Id.* ¶ 11.

During a search incident to arrest, officers recovered two bags from Defendant's pocket.  *Id.* ¶ 12.  One contained fifteen smaller, individually wrapped plastic bags of a white substance suspected to be cocaine base.  *Id.*  The other contained several loose pieces of a white substance suspected to be cocaine base.  *Id.*  A field test of the substance inside one of the small plastic bags returned a positive result for cocaine base.  *Id.*  ¶ 13.  In total, the recovered substances weighed approximately 23 grams.  *Id.*

BHA camera footage captured Defendant engaging in behavior consistent with a hand-to-hand drug transaction approximately two minutes before his arrest.  *Id.* ¶ 14.  Specifically, the footage shows Defendant meet with and appear to give something to a man in a wheelchair who is known to officers as a consistent drug user.  *Id.* ¶ 14.

## II.    ADVISORY SENTENCING GUIDELINES

The government agrees with the guideline calculation provided by the U.S. Probation Office in the PSR.[1]  As detailed in the PSR, the relevant guideline provision for a violation of 21 U.S.C. § 860(a) is USSG § 2D1.2, which, in turn, instructs that the base offense level is two plus the number of levels per USSG § 2D1.1 corresponding to the amount of controlled substance involved in the protected location.  PSR ¶ 19.  The PSR found that Defendant is accountable for approximately 23 grams of cocaine.  *Id.*  This corresponds to a base offense level 12 per USSG § 2D1.1(c)(14), and with a two-level increase per USSG § 2D1.2, Defendant's offense level is 14. With a two-level reduction for Defendant's prompt acceptance of responsibility, the total offense level is 12.  *Id.* ¶¶ 26-27.  Based on a total offense level of 12 and a criminal history category of V, Defendant's guideline imprisonment range is 27-33 months.  *Id.* ¶ 77.

## III.   SENTENCING FACTORS

Consideration of the factors set forth in 18 U.S.C. § 3553(a) demonstrates that a sentence of 27 months' imprisonment, at the low end of the guidelines, followed by the statutorily-required six years of supervised release is sufficient, but not greater than necessary, to accomplish the goals of sentencing.

a.    Nature of the Offense

The Court is well aware of the dangerous and addictive nature of cocaine and the dangers and harm of drug trafficking.  Here, Defendant possessed numerous bags of cocaine packaged for distribution; indeed, camera footage captured him engaging in behavior consistent with a drug transaction with a known drug user approximately two minutes before his arrest.  What's

---

[1] Consistent with Department of Justice policy, the government agrees with the PSR's treatment of the recovered cocaine base as powder cocaine.

3

more, Defendant engaged in this conduct (1) on the grounds of a public housing facility –
conduct that Congress has determined is so dangerous that it prescribed an increased penalty for
doing so – ; (2) while on probation for his most recent firearm-related conviction; and (3) and in
direct violation of an order prohibiting Defendant from trespassing in the same location.

Defendant's drug trafficking not only harmed and endangered his customers and/or direct
users, but also, the numerous residents of the Development.  The impact that drug trafficking and
related crime and violence have on innocent individuals and families living in the Development
is devastating.  Street-level drug deals, drug trafficking, and drug possession, like Defendant's
conduct here, threaten the well-being and safety of the Development's residents.  Indeed,
perfectly illustrating this harm is the fact that as noted above, BHA officers on patrol the day of
Defendant's arrest were focused on certain locations due to an increase in complaints and
information received from residents and management concerning illegal activity in the
Development.

But this was not the first time Defendant endangered this community.  Indeed, as detailed
below, Defendant has repeatedly and consistently posed a danger to the Development, as
demonstrated by his three convictions for firearm-related incidents that occurred in the vicinity
of the Development within the five years leading up to the instant offense.

> b.  Characteristics of Defendant and Need for Deterrence

Defendant's criminal history demonstrates that he remains undeterred, if not emboldened,
by his three firearm-related convictions in the five years before his instant drug trafficking arrest
– for the most recent of which he was sentenced just *one year before*, in September 2022, and
*two of which he committed while on pretrial release* – and encounters with the criminal justice

system to date.[2]  This is to say nothing, of course, of Defendant's complete and utter disregard for the law clearly illustrated by his commission of the instant drug trafficking offense while on probation for his most recent firearm conviction and in direct violation of a no trespass order at the Development.

First, on or about April 23, 2018, Defendant was involved in a shooting in the vicinity of 1 Schroder Plaza, Boston, Massachusetts, which is approximately one mile from the Development.  PSR ¶ 30; *see* Det. Hrg. Ex. 1 (Apr. 23, 2018 Incident Report).[3]  Bullets entered and struck a bedroom and a car.  Ex. 1.  After the shots were fired, officers stopped Defendant and another male, who matched the description of two males seen leaving the area of the shooting, heading towards the Development.  *Id.*  Defendant was carrying a firearm and an unloaded magazine; his associate was carrying a firearm with four rounds in the magazine and one live round in the chamber.  *Id.*  Defendant was charged with various firearm-related offenses in Roxbury District Court and placed on pretrial release.  As detailed below, Defendant was subsequently indicted (and later convicted) in Suffolk Superior Court in connection with this incident.  Dkt. #1884CR00692.

While on pretrial release for the above firearm arrest, Defendant was again arrested for carrying a firearm approximately eight months later, in May 2020.  PSR ¶ 31.  There, officers on patrol in the Development due to an increase in firearm-related activity stopped a vehicle leaving the Development whose registered owner had a suspended license.  *Id.*  Defendant was identified

---

[2] Defendant also received a CWOF for assault and battery for an offense that occurred in July 2016, when he was 16 years old.  PSR ¶ 29.

[3] Exhibit 1, previously admitted at Defendant's Detention Hearing, *see* ECF Dkt. No. 14, is attached here for reference.

as the passenger and found to be carrying a firearm in his pocket.  *Id.*  He was arrested and charged (and later convicted) in Roxbury District Court.  *Id.*

Then, a little over one year later, Defendant, *now on pretrial release for two firearm-related cases*, was *again* stopped with a firearm on the grounds of the Development – this time, loaded.  PSR ¶ 32.  On or about August 4, 2021, officers stopped Defendant, who was wearing a fanny pack, in a parking lot of the Development.  *Id.*  Upon officers advising that they were going to pat frisk the fanny pack, Defendant fled and led officers on a foot chase through the Development.  *Id.*  Defendant was apprehended and the fanny pack was found to contain a loaded firearm.  *Id.*  He was arrested and charged (and later convicted) in Roxbury District Court.

Approximately one month after his third firearm arrest, on or about September 13, 2021, Defendant was convicted in Suffolk Superior Court in connection with the 2018 shots fired incident of discharging a firearm within 500 feet of a building, for which he was sentenced to three months' imprisonment, and unlawful firearm and ammunition offenses, for which he was sentenced to 18 months' imprisonment.  Dkt. #1884CR00692.

Approximately one year later and just one year before committing the instant drug trafficking offense, on or about September 13, 2022, Defendant was convicted in Roxbury District Court of (1) unlawful firearm possession in connection with his 2020 firearm arrest and sentenced to 18 months' imprisonment  and (2) carrying a firearm without a license, for which he was sentenced to two years nuc pro tunc, carrying a loaded firearm without a license, for which he was sentenced to probation, and resisting arrest, for which he was sentenced to 30 days deemed served.  PSR ¶¶ 31-32.

It was in the face of and despite being arrested with firearms three times within a three-year period; having been convicted of such on all three occasions; while on probation for his most recent firearm conviction; and with blatant disregard for the no trespass order that Defendant decided to once again endanger the same community – this time, by engaging in cocaine trafficking on the grounds of the Development.

Defendant has consistently showed a disregard for the safety of the community, the rule of law, and an unwillingness to comply with court-ordered conditions.  Put simply, Defendant has shown an abject indifference to any criminal justice obligations.  As such, the sentence here must send a clear deterrent message to Defendant, as well as to others who might otherwise consider profiting from this dangerous drug.

## CONCLUSION

For all of the foregoing reasons, and in light of the advisory guidelines, the factors enumerated in 18 U.S.C. § 3553(a), and the reasons to be offered at sentencing, the government respectfully recommends that the Court impose a sentence of 27 months' imprisonment followed by six years of supervised release.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:     /s/ Sarah B. Hoefle
         Sarah B. Hoefle
         Assistant United States Attorney


Dated:  June 20, 2024

7

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


<u>/s/ Sarah B. Hoefle</u>
Sarah B. Hoefle
Assistant United States Attorney

Date:  June 20, 2024